IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ANDREW D. DEATLEY                                      PLAINTIFF

vs.                            Civil No. 3:08-cv-03024

MICHAEL J. ASTRUE                                   DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Andrew D. Deatley ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 5).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff protectively filed his applications for SSI and DIB on May 13, 2004. (Tr. 11, 55-58, 306-308). Plaintiff alleged he was disabled due to a concentration difficulty, indecisiveness, depression, sleeping problems, and knee pain.[2] (Tr. 98-101). Plaintiff initially alleged an onset date

---

[1] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

[2] However, at the administrative hearing on February 17, 2006, he did not allege that his knee and back pain were disabling. *See id.* Therefore, this Court will not address his knee and back pain.

of November 3, 2000, but he later amended that onset date to December 1, 2001. (Tr. 322-323). These applications were initially denied on August 20, 2004 and were denied again on reconsideration on October 5, 2004. (Tr. 27-30, 309-315). On December 3, 2004, Plaintiff requested a hearing by an ALJ. (Tr. 40). This hearing was held on February 17, 2006 in Harrison, Arkansas. (Tr. 318-369). Plaintiff was present and was represented by counsel, Frederick Spencer, at this hearing. *See id.* Plaintiff, Plaintiff's friend (Richard Pendergrass), Plaintiff's wife (Judith Deatley), and Vocational Expert ("VE") Tanya Owen testified at this hearing. *See id.* On the date of this hearing, Plaintiff was forty-three (43) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2009), and had received his G.E.D. *See id.*

On September 26, 2006, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (Tr. 11-23). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act through December 31, 2006. (Tr. 13, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since December 1, 2001, his amended alleged onset date. (Tr. 13, Finding 2). The ALJ determined Plaintiff had the following severe impairments: chronic back strain, chronic strain of his knees, schizoaffective disorder (bipolar type), and alcohol dependence. (Tr. 13-17). The ALJ also determined, however, that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr.17-18, Finding 4).

In this decision, the ALJ also evaluated Plaintiff's subjective complaints and determined his RFC. (Tr. 18-21, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints pursuant to the requirements of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) and found his claimed

2

limitations were not totally credible. *See id.* Second, the ALJ determined, based upon this review of Plaintiff's subjective complaints, the hearing testimony, and the evidence in the record, that Plaintiff retained the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 100 pounds occasionally and 20 pounds frequently, push and/or pull within those limitations, stand and/or walk (with normal breaks) for about six hours in an eight-hour workday and sit (with normal breaks) for a total of about six hours in an eight-hour workday. In addition, the undersigned finds that the claimant can frequently reach, grasp objects, handle objects, finely manipulate objects and feel objects but that he can only occasionally push/pull/operate controls with his hands or feet and climb, balance, stoop, kneel, crouch and crawl. Further, the undersigned finds that the claimant must avoid moderate exposure to heights, moving machinery, chemicals, noise, humidity, dust/fumes, temperature extremes and vibrations. Lastly, the undersigned finds that the claimant is limited to performing work where interpersonal contact is incidental to the work performed (e.g. assembly work), where the complexity of tasks is learned and performed by rote with few variables and little judgment and where the supervision required is simple.

(Tr. 18-21, Finding 5).

The ALJ then determined Plaintiff would be unable to perform his Past Relevant Work ("PRW") but would be able to perform other work existing in significant numbers in the national economy. (Tr. 21-23, Findings 6, 10). Plaintiff and the VE testified at the administrative hearing regarding these issues. (Tr. 318-369). Based upon this testimony, the ALJ determined Plaintiff's PRW included work as a park worker, construction laborer, greens keeper II, and an auto assembler. (Tr. 21-22). The ALJ determined, considering his RFC, that Plaintiff would be unable to perform any of this PRW. *See id.*

However, considering his RFC, age, education, and work experience, the ALJ also determined Plaintiff would be able to perform other work existing in significant numbers in the national economy. (Tr. 22-23, Finding 10). Specifically, the VE stated, in response to a

supplemental hypothetical and supplemental interrogatories from the ALJ, that Plaintiff retained the ability to perform work as a cook's helper with 2,200 such jobs in the regional economy and 251,700 such jobs in the national economy; housekeeper with 3,600 such jobs in the regional economy and 409,000 such jobs in the national economy; and a mail clerk with 500 such jobs in the regional economy and 79,000 such jobs in the national economy. (Tr. 22-23). Based upon these statements, the ALJ determined Plaintiff had not been under a "disability," as defined by the Act, at any time from December 1, 2001 through the date of the ALJ's decision or through September 26, 2006. (Tr. 23, Finding 11).

On November 22, 2006, Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 6). *See* 20 C.F.R. § 404.968. On March 21, 2008, the Appeals Council declined to review the ALJ's unfavorable decision. (Tr. 3-5). On May 15, 2008, Plaintiff filed the present appeal. (Doc. No. 1). The parties consented to the jurisdiction of this Court on August 19, 2008. (Doc. No. 5). Both parties have filed appeal briefs. (Doc. Nos. 9-10). This case is now ready for decision.

## 2. Applicable Law:

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have

supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to

the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)-(f).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the following: (1) the ALJ erred by failing to adopt the opinions of Plaintiff's treating and consulting physicians who found Plaintiff's GAF score was extremely low, (2) the ALJ erred by failing to provide his reasons for disregarding some of Plaintiff's medical records, (3) the ALJ erred by failing to provide substantial evidence to support his disability determination, and (4) the ALJ erred by failing to give sufficient reasons for discounting the testimony of Plaintiff, Plaintiff's neighbor, and Plaintiff's mother.  (Doc. No. 9, Pages 10-21).

In response, Defendant argues that the ALJ properly assessed and evaluated the opinions of Plaintiff's treating and consulting physicians prior to finding Plaintiff was not disabled.  (Doc. No. 10, Pages 4-10).  Defendant argues that the ALJ provided a "thirteen page decision" which "demonstrates that the medical evidence was discussed in detail." *See id.* Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff retained the RFC to perform medium work. *See id.* at 10-15.  Finally, Defendant argues that the ALJ properly weighed and evaluated the subjective testimony. *See id.* at 15-16.  Because this Court finds the ALJ improperly assessed Plaintiff's alleged mental impairment, this Court will only address that issue.

As noted in Plaintiff's appeal brief, there are only three medical reports or sets of medical

records included in the transcript that reflect the severity of Plaintiff's alleged mental impairment.[3] (Tr. 141-154, 217-226, 251-259). The first set of records is from Port Huron Hospital and is dated from November 7, 2000 until November 10, 2000. (Tr. 141-154). While these records may be dated prior to Plaintiff's alleged onset date, and are not dated during the relevant time period, this Court is still permitted to review and consider these records. *See Pirtle v. Astrue,* 479 F.3d 931, 934 (8th Cir. 2007) (holding that the court is permitted to consider all evidence of record, including medical records and opinions dated prior to the alleged onset date, when there is no evidence of deterioration or progression of symptoms).

From November 7, 2000 until November 10, 2000, Plaintiff was voluntarily admitted for a psychiatric hospitalization. *See id.* Plaintiff's treating physician noted the following about his condition upon being admitted to the hospital:

> He was becoming increasingly incapacitated, with anxiety and depression. He was crying most of the time and not functioning. He had suicidal ideations of taking an overdose of medications. He, however, has not made any suicide attempts or gestures before admission. He had been increasingly anxious and depressed since his father died suddenly of a myocardial infarction on 10/24/00 in Arkansas. He returned from Arkansas about a week ago. He was experiencing a great deal of difficulties at work. He walked off the job and came to the emergency center of the hospital . . . .

(Tr. 145). Upon admission, Plaintiff was assessed as having a Global Assessment of Functioning ("GAF") score of 25. (Tr. 144). Upon discharge, Plaintiff was assessed as having a GAF score of 45. (Tr. 146). While a GAF score of 25 is more severe, the GAF score of 45 reflects "[s]erious symptoms OR any serious impairment in social, occupational, or school functioning." *Diagnostic*

---

[3] In his appeal brief, Defendant concedes that these are the only three reports or sets of medical records related to Plaintiff's claimed mental impairment. (Doc. No. 10). However, Defendant argues that the assessment of Plaintiff's mental impairment from his *physical* consultative examinations should be evaluated too. However, this Court finds that those assessments were intended to only be used to evaluate Plaintiff's alleged physical impairment and, as such, are not controlling for Plaintiff's alleged mental impairment.

*and Statistical Manual IV* 32 (4th ed. 1994).

The second record is a report dated July 14, 2004 by Dr. Adam T. Brazas, Ph.D. (Tr. 217-226). Dr. Brazas examined Plaintiff during a consultative examination. *See id.* After examining Plaintiff, Dr. Brazas diagnosed him with schizoaffective disorder (bipolar type), alcohol dependence, rule out ADHD (inattentive type), and rule out personality change due to head injury (aggressive type). *See id.* Dr. Brazas assessed Plaintiff with a GAF score of 50 and noted that he did not expect Plaintiff's condition to "improve significantly within the next 12 months." *See id.* A GAF score of 50 reflects "[s]erious symptoms OR any serious impairment in social, occupational, or school functioning." *Diagnostic and Statistical Manual IV* 32 (4th ed. 1994).

Finally, the third record is a report from Dr. Vann Smith, Ph.D. dated October 5, 2004. (Tr. 251-259). In this report, Dr. Smith diagnosed Plaintiff with organic brain syndrome (secondary to traumatic brain injury), cognitive dysfunction (secondary to OBS), and organic affective syndrome (secondary to OBS). *See id.* Due to these impairments, Dr. Smith placed severe limitations on Plaintiff's ability to remember and perform day-to-day activities. (Tr. 256-258). Dr. Smith also found Plaintiff was unable to meet competitive employment standards. (Tr. 257). Finally, Dr. Smith assessed Plaintiff as having a GAF score of between 60 to 65. *See id.* A GAF score of between 60 to 65 reflects "[m]ild symptoms in one area OR difficulty in one of the following: social, occupational, or school functioning. BUT, the person is generally functioning pretty well and has some meaningful interpersonal relationships." *Diagnostic and Statistical Manual IV* 32 (4th ed. 1994).

Apart from Dr. Smith's relatively high assessment of Plaintiff's GAF, these records all reflect that Plaintiff suffers from a serious, disabling mental impairment. Neither the ALJ in his opinion

nor the Defendant in his appeal brief offered any evidence contradicting these findings. Accordingly, because the ALJ did not find any evidence contradicting these findings, this Court finds that the ALJ's disability determination is not supported by substantial evidence, and this case must be reversed and remanded.

**4. Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should be reversed and remanded. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 19th day of June, 2009.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE